CRITTENDEN BROTHERS *vs.* COLEMAN & COMPANY *et al.*[*]

1. An assignment by an insolvent debtor for the benefit of creditors was void, under the act of 1881, and conveyed no title, where no schedule or inventory was attached to the deed of assignment. 70 *Ga.*, 293.

2. Where purchasers bought from an assignee of insolvent debtors for the benefit of creditors, and such assignment was void, they could not set up the purchase as being from him as a mere agent for the debtors.

[*]No full reports or opinions are published in the following cases, under the provisions of the act of March 2, 1875.

3. When purchasers under such an assignment were shown the deed of assignment, by virtue of which the assignee offered to sell, and failed to read it, they were charged with notice of their title from such assignee and that it was void, and they would not be innocent purchasers without notice. Such conduct was not mere lack of prudence, but was gross negligence.

4. If the debt held by one claiming to be a mortgage creditor is honest and her lien superior, that issue may be tried on the distribution of the fund; if not a party, she can then be made one, and if the complainants have already paid her, they can recover it from her. The present decree is simply that the money be deposited in court, because the assignee had no title, and neither could nor did convey any to the purchasers from him. On rule or other proceedings to distribute the fund, all creditors can come in and be heard and all priorities be adjudicated.

5. The verdict was required by the evidence.

Judgment affirmed.

October 2, 1884.

JACKSON, Chief Justice.

[S. T. Coleman & Company *et al.*, on behalf of themselves and other creditors of A. Lane & Company, who might be made parties, filed a bill against Crittenden Brothers, A. Lane & Company *et al.*, to set aside an assignment made by Lane & Company to R. E. Kennon and a sale by him to Crittenden Brothers. The bill alleged, in brief, as follows:

A. Lane & Company were composed of A. Lane and R. Q. Lane and did business at Ward's Station, in Randolph county. They made large purchases from complainants. They were wholly insolvent. On or about December 4, 1882, their entire stock of goods was suddenly transferred to the store-house of Crittenden Brothers, merchants, also doing business at the same place, and were mixed with their stock therein. When asked for information, Crittenden Brothers stated that they had bought and paid for the stock, but gave no satisfactory information concerning the transaction. Lane & Company, when asked about the sudden disappearance of their stock, stated that they had made an assignment to R. E. Kennon, who is related to R.

Q. Lane, the two having married sisters, but no definite information as to the particulars of the assignment was given. The assignment was not put on record, and the complainants could not set it out in detail. Lane & Company and Crittenden Brothers differed in their statements as to what the sale brought and whether the purchase price had all been settled. Lane is causing his furniture, trunks, etc., to be shipped to Alabama in the name of Kennon, and on the seventh of December, he and his wife took the train for Eufaula, Alabama, he stating that he intended to return. R. Q. Lane has removed to Fort Gaines, thus leaving no one at Ward's Station to collect the assets of the firms in notes, etc. The disposition of the stock of goods was for the purpose of hindering and defrauding creditors. The prayer was for judgment against Lane & Company, Crittenden Brothers and R. E. Kennon; that a receiver be appointed; and for injunction and subpœna.

By amendment it was alleged that the assignment was absolutely null and void, because no full and complete schedule of the assets of Lane & Company was attached to the same when it was executed; also that certain collaterals, in excess of the debt they were intended to secure, should have been included in the assignment; that if the firm was composed of A. Lane and R. Q. Lane, as set out in the body of the assignment, it was not sworn to by any member of the firm. It was alleged that the first debt preferred in the assignment, viz., one of $7,525.00 to Mrs. Mary Lane, wife of A. Lane and mother of R. Q. Lane, was not a *bona fide* debt, and that the assignment was therefore fraudulent and void. It was charged that Crittenden Brothers had notice of the insolvency of Lane & Company and of the fraudulent nature of the assignment, or, at least, had reasonable grounds for suspecting the same, and that they colluded with Lane & Company; also that they obtained the goods at one-fourth less than the cost price thereof; also that Lane & Company made the purchases of goods from complainants under fraudulent

representations as to their solvency. The amendment prayed for an injunction and receiver; that the assignment be declared void; that the pretended debt to Mrs. Lane be stricken therefrom; and that the sale to Crittenden Brothers be set aside and the goods be delivered to a receiver.

Lane & Company answered, in brief, as follows : They did not make the assignment to defraud creditors, or because of insolvency (they being at that time in good credit); but because they desired to dissolve partnership; and knowing that they were indebted to various parties, and that when they stopped business, creditors would be alarmed and litigation would probably result, and believing that if their stock could be sold out at a fair price and their notes and mortgages collected up, they could pay all or nearly all of their debts, and desiring to prefer some of their creditors to others, they made the assignment, and selected Kennon as a fit and proper person, he being also brother-in law of R. Q. Lane. They transferred every dollar of their property to him, as appears by a list of assets attached to the deed and sworn to at the time the latter was made. On the day they made the assignment, Kennon, as soon as he accepted the position of assignee, sold the entire stock to Crittenden Brothers for seventy-five per cent of the original cost. He so informed these defendants, and told them Crittenden Brothers were to pay one-third of the purchase money in cash, one-third in thirty days and one-third in sixty days. R. Q. Lane assisted in taking stock. This required two and a half days. As soon as it was done, Kennon received the payment for the goods, amounting to $3,800 00. These defendants had no control over the sale, but Kennon had the right to make it. A. Lane answered that he told Thomas Willingham, Esq., attorney for complainants, all he knew about the assignment, and referred him to Kennon for further information. He denied that he was shipping his trunks, etc., in the name of Kennon, or that they contained any-

thing but his household goods and wearing apparel, and stated that they had nothing to do with the firm property. The assignment was in good faith.

Kennon answered, as follows : He adopts the answer of A. and R. Q. Lane as to the facts which relate to him. They stated to him the same reasons for making the assignment as those set out in their answer. He accepted the trust in good faith and proceeded at once to carry it out. He called on H. Crittenden, of the firm of Crittenden Brothers, and told him of the assignment, and that the reason for it was a desire to dissolve ; that they were solvent and could pay all their debts if he could sell the goods at a fair price and collect up the debts, and that he wanted to sell Crittenden the stock; that if he did not buy the goods, and they were put on the market at cost and sold out at retail, they would injure him in his trade. Crittenden asked Kennon if there was any risk in buying them, to which the latter replied that there was not ; that Lane & Company had assigned to him, and he had a perfect right to sell the stock; that if Crittenden bought, he would get a perfect title and take no risk. Crittenden thereupon bought; stock was taken, which required two days, and the trade was closed.

A. Lane, R. Q. Lane and Kennon all answered the amended bill, alleging that at the time the assignment was made, a full and complete list of the assets of Lane & Company was made, sworn to and attached to the assignment; and that there was a list of notes, mortgages and accounts in the hands of a justice of the peace for collection also attached to the assignment when it was signed, but they have since been mislaid by Kennon ; that an apparent alteration in the date of the assignment resulted from an error of Kennon, and was corrected before its execution. They denied that the debt to Mrs. Lane was not *bona fide*, and alleged that it was for borrowed money. Kennon also alleged that the day the settlement for the goods was made, he received from Crittenden Brothers,

defendants, for the purchase of the stock, about $3,800.00, and paid the proceeds over to Mrs. Lane; also paying the taxes and the amount due certain clerks.

Two of the Crittendens answered, in effect, that they knew nothing of the trade, except as they were told; and that Lane & Company were doing a good business, and were apparently solvent.

H. A. Crittenden answered, in brief, as follows: Lane & Company appeared to be solvent. On December 2, 1882, Kennon proposed to sell to him. He then detailed the conversation and transaction substantially as it is set out in the answer of Kennon. To the amended bill he answered, denying all collusion or knowledge of the insolvency of Lane & Company, and alleging that the price paid for the goods was all they were worth at the time, and that they had nothing to do with Lane & Company, but bought from Kennon, the assignee.

The case was heard on the application for injunction and receiver, and from the grant of an injunction and appointment of a receiver, a writ of error was taken. The case will be found reported in 70 *Ga.*, 293.

At the trial, Crittenden Brothers filed an amendment to their answer, in the nature of a cross-bill, alleging that if the court should hold the assignment void for any purpose, they bought the stock of Kennon, who was the agent of Lane & Company, and that the sale was authorized, ratified and confirmed by them; that a fair market price was paid for the goods, without any circumstances of suspicion, and without any intention to hinder, delay or defraud creditors.

It is unnecessary to set out the evidence in detail.

Following the deed of assignment in the record appears a list of certain assets, among which is stated, "stock of goods, itemized list of which is here attached," but no itemized list, in fact, appears; and following this an affidavit of R. Q. Lane, dated December 2, as follows:

"That we have made an assignment to R. E. Kennon of a'1 our assets to pay our creditors, and that these pages contain all our assets, they being our stock of goods now in store, 1 safe, 2 show cases, one pr. scales, some paper boxes, together with this list of notes and accounts; all of these taken together is a full and complete inventory and schedule of all the assets of every kind held, claimed and owned by said firm of A. Lane & Co. at the time of making their assignment."

It also appeared that the sale to Crittenden Brothers was on Saturday, and the parties began taking stock on Monday.

Kennon testified that he drew the deed of assignment and made the sale to Crittenden Brothers substantially as set out in his answer; that he was a brother-in-law of one of the Lanes and an uncle by marriage of one of the Crittendens; that he drew the answers both of the Lanes and of the Crittendens, but received no pay therefor, and was not their paid counsel, but notified them that, if the matter went further, they must get other counsel, which they did. He testified as follows as to the completeness of the deed of assignment at the time of its being made:

"The deed of assignment is, or was when I last saw it, exactly like it was when A. Lane & Company signed it and turned it over to me. I have never altered it in any particular whatever; neither has any one else altered it. The apparent change of the deed was done before it was signed by A. Lane & Company. Since it was signed and turned over to me, I have never altered it in (any) particular, and the last time I saw it, it had not been altered by any one."

There was other conflicting evidence not material here. Mrs. Lane was, at one time, made a party, but subsequently her name was stricken.

The chancellor ordered that the issue between complainants and Crittenden Brothers be tried alone, leaving the question of distribution for after determination. The jury found for complainants, and the chancellor entered the following decree:

"The jury, to whom was submitted the issue described above, having returned a verdict in favor of the complainants against Crittenden Brothers, it is ordered and adjudged and decreed that the sum of money placed in the hands of the receiver of this court by Crittenden Brothers in lieu of goods ordered to be turned over to said receiver by the said Crittenden Brothers, be recovered of the said Crittenden Brothers in favor of the creditors of A. Lane & Company, and that the same remain in the hands of the receiver, subject to the further order of this court as to distribution among them. It is further ordered and adjudged that complainants recover of defendants, Crittenden Brothers, —— dollars and —— cents for costs."

Crittenden Brothers moved for a new trial, on the following among other grounds:

(1), (2.) Because the verdict is contrary to law, evidence, the principles of justice, and strongly and decidedly against the weight of evidence.

(3.) Because the court refused to charge as follows: "But, even if the assignment was invalid, and no title passed to Kennon, as assignee thereunder, still, if Kennon, although calling himself assignee and professing to sell as such, did, in fact, sell said goods to Crittenden Bros. by the authority of said A. Lane & Co., derived outside or independent of the assignment, and if the said A. Lane & Co. agreed to the terms of the sale, and delivered the goods in pursuance thereof, and received the money therefor, or authorized Kennon to receive it, then Crittenden Bros. acquired title to the goods so sold them, provided it was, on their part, a *bona fide* transaction on a valuable consideration, and without notice or grounds of reasonable suspicion of fraud or intention on the part of A. Lane & Co. to hinder, delay or defraud their creditors."—["This charge was refused, on the ground that the answers of defendants and the testimony of H. A. Crittenden admitted and established a purchase from the assignee and of the assignee's title, and none other."]

(4.) Because the court refused the following request: "Although Kennon may have professed to sell as assignee, and Crittenden Bros. may have thought they were buying from him as such, yet if there was no legal assignment or

a void assignment, then, if A. Lane & Co. authorized Kennon to sell the goods, or, after the sale, ratified and con-firmed the sale, and delivered the goods under said sale, then the sale and purchase was good."—["This charge was refused on the same grounds as the foregoing."]

(5.) Because the court refused the following request: " Notwithstanding the invalidity of an assignment as it respects the creditors of the assignor, a sale of goods assigned, made by the assignee before the creditors have obtained a specific lien upon them, to an innocent purchaser for a valuable consideration, is valid."

(6.) Because the court refused to allow J. F. Crittenden, a witness for defendants, to state what he heard either of the Lane's say about the sale and delivery of the goods during the time of taking the inventory and the delivery of the same.—[" Said statement being offered to prove a purchase by defendants of Lane & Co. of their title, which the court held contrary to the case set up in the answers, and in Crittenden's testimony."—Other testimony offered for the same purpose was also excluded.]

(7.) Because the court charged as follows: " Complainants say that the assignment was void in law, because, at the time it was executed, there was not attached to it ' a full and complete inventory and schedule of all the property owned or claimed by Lane & Co.' Now, the statute declares that, unless there is such a schedule and inventory sworn to and attached to the assignment at the time of its execution, the assignment is invalid; this means that the schedule verified by the assignee's (assignor's?) oath must be actually fastened to the assignment at the time of signing and delivering it. The statute says that it must be a full and complete inventory and schedule of all the property of every kind," etc.

(8.) Because the court charged as follows: " The court instructs you that, if the assignment conveys a stock of goods, valued therein at some $5,000, and a lot of notes and accounts, and other evidences of debt, and some store

furniture, as being all the property of assignors, and if no other schedule or inventory of such stock of goods was attached except in these words, ' stock of goods in the store we are doing business in, an itemized list of same is hereto attached,' and if the assignment shows the stock valued at $5,000, then that was not such a full and complete schedule and inventory of said goods as ought to have been attached as the law demanded should be attached. And the court charges you that the words, ' an itemized list of the same is hereto attached,' contained in such attached schedule, show that the assignors did not regard the inventory as complete, but intended that it should be afterwards made so; the court further charges you that, in consequence of such defect of schedule and inventory (if such be the fact) the assignment was (in favor of creditors) void, and conveyed no good title to Kennon as assignee."

(9.) Because the court charged as follows : " If, then, Kennon, as such assignee, on the day of the assignment, offered to H. A. Crittenden to sell, as assignee, the said stock to Crittenden Bros., then and there informing him that the assignment had been made to him by A. Lane & Co., and offering to produce the assignment which he had then present, and if Crittenden declined to look at the assignment, bought, and if the assignment had no other schedule or inventory of said stock of goods attached, except that which I described in the supposition above, then Crittenden Bros. failed to buy and get a good title by that purchase, even if they paid full value, and if they intended no wrong."]