CRITTENDEN BROTHERS *et al. vs.* COLEMAN & COMPANY *et al.*

[This case was argued at the last term, and the decision reserved.]

Under the facts and circumstances before the chancellor in this case, there was sufficient to authorize the grant of the injunction and appointment of a receiver.

(*a.*) The act of 1881, on the subject of voluntary assignments by insolvent debtors for the benefit of creditors, must be construed liberally in favor of creditors, for whose benefit it was enacted, and strictly against the debtor and assignee. It is essential to the rights of creditors that the schedule of property assigned be made out specifically, so that it may be seen if the assignment covers property sold by them, and whether, by reason of fraud in the debtor, they can claim title thereto. This schedule must be made out and attached to the deed of assignment at the time of its execution. It will not be sufficient to prepare a schedule afterwards and fold it within the deed.

February 27, 1883.

Injunction and Receiver. Debtor and Creditor. Insolvency. Before Judge CLARKE. Randolph County. At Chambers. January 6, 1883.

Reported in the decision.

KENNON & RAMBO; A. HOOD, Sr., for plaintiffs in error.

W. D. KIDDOO; A. HOOD, Jr.; THOMAS WILLINGHAM, for defendants.

JACKSON, Chief Justice.

This is a writ of error to an injunction and the appointment of a receiver. On the grant of such an order, this court will not control the discretion of the chancellor on contested facts, unless it has been abused.

From the bill, answers and affidavits before the chancellor, these facts are made out by the complainant, though controverted by the defendants, and they are sufficiently proved to show that the chancellor has not abused his discretion:

That complainants are creditors of Lane & Company; that defendants were engaged in mercantile business at Ward's station in Randolph county in 1881 and 1882; that on representation of their solvency and assets, goods were sold them by some of complainants in the fall of 1882; that an assignment was attempted to be made of the assets of Lane & Company, but is illegal because no schedule was made out and attached thereto, in accordance with the act of 1880–81, page 74; that the assignment was made to R. E. Kennon, the counsel of Lane & Company, and brother-in-law of one of the firm; that the preferred creditor is Mrs. Lane, the wife of one of the firm and sister of the assignee's wife; that the notes to her were made the 7th of September, 1882, and mortgage to secure them the same day, of all the goods; that the assignee at once sold out all the goods to Crittenden Brothers, also merchants at Ward Station, in a lump and in great haste, at a discount; that Crittenden Brothers have mixed, as they themselves allege, these goods with their own, immediately on their receipt; that one-third cash, one-third at thirty and one-third at sixty days, are the terms of sale; that large sums have been already paid in cash on said notes to Mrs. Lane, and acceptances turned over to her by Kennon, the assignee; that there is complicity between the assignee and Crittenden Brothers and Lane & Company, to hinder, delay and defeat creditors, who are complainants; that some of the creditors hold collaterals in respect to some effects which have been assigned to Kennon; that the debt alleged as due Mrs. Lane is attacked as fraudulent; that the firm is composed of A. Lane, and his son, agent, and a short time before the assignment, this large indebtedness of several thousand dollars is made by note and mortgage to the wife and mother; and that complainants, on these facts and charges, make a case for equitable interference by injunction and receiver

The legal question is, are these facts, if true, sufficient to authorize equity, to interpose an injunction and appoint a receiver.

The assignment is made in a hurry. The sale to Crittenden Brothers as hurriedly. The schedule seems to have been completed after this transaction. It was not, therefore, attached to the assignment when made. The assignee, it is alleged, is in complicity with his relatives. The creditors were induced to sell portions of the goods to Lane & Company, on their false and fraudulent representation of large assets and perfect solvency, and yet they are insolvent. The assignee has thus sold to Crittenden Brothers goods which belonged to complainants, because title never passed, as fraud procured the sale. Crittenden Brothers immediately mixed the goods with their own, when delivered to them. They were neighbors of Lane & Company in mercantile business, and should have looked into matters before they bought and thus hastily mixed the new purchase with their own goods, and must have known or suspected that something illegal was on hand. They should have examined the title of the assignee before their purchase, without the knowledge of the creditors or any of them from whom the goods were purchased. They bought, it seems, as soon as, if not before, the assignment was completed. These deductions the chancellor may have legally made from the facts; and, in their light, he did not err in the order appointing a receiver, under good bond, to take charge of everything, and collect and distribute the fund under such decree as should be finally made—the order embracing the goods sold to Crittenden Brothers, as well as all the mortgages and evidences of debt of all sorts in the hands of the assignee and afterwards the temporary receiver, Kennon, and in enjoining the said assignee and temporary receiver from further action in the premises, his temporary appointment being rescinded, and in enjoining Crittenden Brothers from making any other disposition of the goods of Lane & Company, so conveyed by the assignee to them. 8 *Ga.*, 511; 42 *Ib.*, 46; 57 *Ib.*, 247 · 58 *Ib.*, 50; Acts of 1880–81, p. 574.

The principles ruled in the cases above cited, fix these circumstances as equitable grounds for interposition. Those principles are the allegations of complicity of the assignee and the circumstances pointing thereto; the fraudulent representations of Lane & Company in the procurement of the goods of complainants, by which it is claimed the title to Lane & Co. did not pass, but remained in complainants, the allegation of complicity of Crittenden Brothers therein, fortified by their failure to examine into the assignment and its validity; the proximity of their mercantile residence to Lane & Co.; the haste of their purchase at private sale, and the instantaneous mixing of the purchased goods with their own stock the large debt to Mrs. Lane, the wife of the real man of the firm, the other being a mere agent and son, put in the form of notes and secured by mortgage on the entire stock a short time prior to the assignment, all tending to show fraud in the assignment; and then, above all, the failure to attach the schedule to the deed at the time of the assignment. The act of 1881 is a great remedial statute, and must be construed liberally in behalf of creditors, for whose protection it was enacted, and strictly against the debtor and assignee. It is essential to rights of creditors that the schedule of whatever is assigned, be made out specifically, so that creditors may see what has been assigned and what goods they sold are among those assigned, and whether, by reason of fraud in the debtor, they can claim title thereto. Unless this schedule be attached, not loosely folded with the deed of assignment, the entire policy and force of this remedial statute will be destroyed. If an assignment be fraudulently made, it will be quite easy to change a loosely folded schedule, and the contest between creditors and debtor making assignment of all he possesses, is always fraud or no fraud. Therefore, we hold that, under this statute, the schedule must be made out and attached to the deed as part thereof and essential to its validity, at the time of its execution. It will not do to take stock and fix

it up afterwards, nor so to fix it up as to take it off the deed *ad libitum*. I must be attached to it.

We do not say what may be the proof on the final hearing on all the testimony. All we now determine is, that the facts and circumstances in the hearing before the chancellor, are sufficient to authorize his action in the grant of the injunction and the appointment of the receiver.

Judgment affirmed.