THE IMPORTERS AND TRADERS BANK *v.* McGHEES & Co.

1. Where a mortgage is given by a principal debtor to his indorser, not as a security for the debt, but solely for the indemnity of the indorser, the latter could not proceed against the mortgaged property until judgment had been rendered against him in favor of the creditor. Code, §2164.· It follows that the creditor, prior to obtaining such judgment, cannot proceed in his own behalf to enforce the mortgage, even though the principal debtor and the indorser both be insolvent, the rights of the creditor depending, not upon the law of trust, but upon the law of subrogation.
2. Nor can the creditor, prior to obtaining judgment on his debt, maintain a bill or petition to impound the mortgaged assets to await the recovery of such judgment. Up to the rendition of judgment, the right to preserve the security is one personal to the indorser, and to which the creditor is not subrogated.
   February 1, 1892.

Principal and indorser. Debtor and creditor. Mortgage. Trust. Subrogation. Party. Before Judge MADDOX. Floyd superior court. March adjourned term, 1891.

The Importers and Traders National Bank of New York filed its equitable petition against McGhees & Company and others, to foreclose, for the benefit of the plaintiff, a mortgage which McGhees & Co. had given to James McGhee, who had indorsed to the bank certain notes given by them to him. E. T., J. F. and J. N. McGhee, partners composing the firm of McGhees & Co., demurred to this petition, and the demurrer was sustained. The petitioner excepted, insisting that the mortgage and lien given to James McGhee was a trust created for the ultimate security and protection of the notes indorsed by him; that the petition and exhibits show that McGhees & Co. and James McGhee are all insolvent, and the property upon which the lien operates is in danger of being lost and will not be forthcoming to satisfy the lien fixed upon it, unless injunction be granted; and that the liability of James Mc-

Ghee attached and the loss accrued to him as soon as the notes indorsed by him were protested for non-payment and he was so notified.

The petition was against E. T., J. F. and J. N. McGhee, partners as McGhees & Co., the Rome Fire Insurance Company, and others (James McGhee not being a party), and set forth substantially the following: On August 18, 1890, McGhees & Co. made their promissory note for $5,000, due four months after date, payable to the order of James McGhee at petitioner's bank, and on October 31, 1890, another note for the same amount, payable to the same person at the same place, and due four months after date, both of which notes were indorsed by James McGhee to petitioner for a valuable consideration. When the first became due it was presented for payment at the place of payment, payment was refused, and it was duly then and there protested. The second is not yet due. About December 12, 1890, McGhees & Co. failed in business, made to the other defendants a mortgage upon all their stock of goods and merchandise, and gave them a conveyance of a large amount of notes and accounts, all as security for certain debts claimed to be due by McGhees & Co. to such defendants. On the same day McGhees & Co., in order to secure James McGhee against any loss that he might sustain by reason of his indorsement of the notes before mentioned, executed and delivered to him a mortgage upon the same property mortgaged to the other defendants, and also transferred to him, as collateral security and to indemnify him as aforesaid, all the notes and accounts named in the conveyance made for the security of the other defendants, that is to say, such of them as may not be used by the other defendants. On December 17, 1890, E. T., J. F. and J. N. McGhee, for greater security of the debts claimed by the other defendants, made and delivered to them another mortgage

and conveyance embracing the same property, and for the same uses and purposes intended by the former conveyance. The debts claimed by the mortgagees in said mortgages, exclusive of the mortgage to James McGhee, amount to $31,248.47, besides interest, and the property mortgaged and conveyed to them is worth $60,000, or other large sum, and is largely in excess of their claims. The claim of the Rome Fire Insurance Co. at the time of the making of the mortgages was fully secured by the deposit of other collateral which is still in its hands, and is sufficient to pay its claim. By the terms of the mortgages the mortgagees are invested with power of sale, and they appointed Mc-Williams as their agent, and as such he took possession of the property described, and of the notes and accounts conveyed, and is actively engaged selling it and collecting the notes and accounts. The firm of McGhees & Co., and the members thereof, are insolvent, James McGhee is a non-resident of the State, is the father of the partners in the firm of McGhees & Co., is insolvent, and neglects to enforce the mortgage given to indemnify him, or to take any steps whatever in the premises. In addition to a prayer for process, the bank prays that the mortgage given by McGhees & Co. to James McGhee be declared to be a security for its debt, and be foreclosed for its use and benefit; that its lien upon the property, notes and accounts named in the mortgage be set up and enforced against the proceeds of the sales of the property, and the collection of the notes and accounts in the hands of McWilliams, after paying off such liens as are prior to the lien of the mortgage made to James McGhee; that McWilliams be enjoined from paying to the insurance company any of the proceeds of the property, until it shall first have applied to its claim the proceeds of the collateral in its possession, and also from delivering the possession of

the property in his hands to any person other than the bank, and from paying over the surplus that may remain in his hands, after paying off the just claims due, to any person other than the bank; and that he be directed to proceed with the sale of the property and collection of the notes and accounts, and account to the bank as to all his actings and doings in the premises, and pay off and discharge its debt out of the surplus remaining in his hands after paying the prior claims. By amendments the bank alleged : Since the beginning of the suit McWilliams has sold all the goods in his hands as agent of the prior mortgagees, and has collected a portion of the notes and accounts, but a large amount of them are still in his hands uncollected. Out of the proceeds of his sales and collection he has paid off all the prior mortgages, except that of the insurance company, so that with the exception of that mortgage, the mortgage given to James McGhee has become the first lien on the funds and assets remaining in McWilliams' hands. Wherefore it prays that the equities between it and the insurance company be settled; that McWilliams be made receiver, and be ordered to collect the assets remaining in his hands and report his actings from time to time; and that petitioner's debt be paid, etc. Further alleged : Both of the notes were duly presented for payment at the place of payment, and payment was demanded and refused; whereupon they were protested, and notice of presentation, demand and protest were duly given to James McGhee, who, on September 22, 1890, and October 31, 1890, respectively, by his contract in writing guaranteed the payment at maturity of the two notes in the petition referred to, and in writing waived demand of payment and notice of protest of these notes. He resides in Alabama, and by voluntary deed, purporting to have been made March 1, 1890, conveyed to his wife all his lands, and thereby

v 88-45

stripped himself of all property and rendered himself insolvent; and petitioner has filed a bill in chancery in Alabama, praying that said deed be set aside, and that petitioner recover a judgment against him for the notes so indorsed by him. The second note referred to in the petition was presented for payment at maturity, and payment was refused, and it was then and there protested for non-payment. And the bank further prays, that in the event the court shall decide that the relief sought cannot be granted as prayed for, the defendants be enjoined from paying out or disposing of the property covered by the mortgage given to James McGhee, or the proceeds thereof, until the bank's rights in the premises are fixed and determined, and until the liability of James McGhee, as indorser, be determined. Attached were exhibits of the documents mentioned. The mortgage made by the McGhees, composing the firm of McGhees & Co., to James McGhee, recited that James McGhee had indorsed as accommodation paper the two notes, both discounted by McGhees & Co., with the Importers & Traders National Bank, and "to secure said James McGhee against any loss that he may sustain by reason of said indorsement, said McGhees & Company hereby create in favor of said James McGhee a mortgage and lien upon the following described property," etc. It also conveyed to him, as collateral security for the same purpose for which the mortgage was made, the notes and accounts described in lists attached to the mortgage to the Rome Fire Insurance Company and others, and certain pig iron, and stated that this mortgage to James McGhee, and the transfer of notes and accounts to him, was made subject to the other mortgage and transfer mentioned, "provided, nevertheless, that if said James McGhee should suffer any loss by reason of said indorsement, or should said McGhees & Company pay any loss that said James McGhee may

sustain by reason of said indorsement, then this instrument to become void and of no effect."

The demurrer was upon the grounds: No cause of action is set out; by the terms of the mortgage made to James McGhee it was only to secure him in case of loss by him upon the indorsement of the notes, and the petition does not allege that any loss has been sustained by him; under the petition there is shown no liability upon the part of James McGhee upon the notes, nor any liability, nor future loss to him by reason of the matter set out in the petition; and the mortgage given to him was a security personally to him only, and to secure him against loss, the intention of the mortgage not being to secure the debt of the bank, nor in any way to make it a preferred creditor.

DABNEY & FOUCHÉ, for plaintiff.

DEAN & SMITH and J. BRANHAM, for defendants.

BLECKLEY, Chief Justice.

The mortgage given by the principal debtors, McGhees & Co., to their indorser, James McGhee, was not given expressly as a security for the debt or to raise a fund for its payment, but solely to indemnify the indorser against loss by reason of his indorsement. This mortgage the creditor, the Importers and Traders National Bank of New York, now seeks to enforce against the mortgaged property without making the indorser, who resides in Alabama, a party to the proceeding. The principal debtors, who were among the parties defendant to the plaintiffs' petition, demurred, and their demurrer has been sustained.

The code in section 2164 declares: "If the principal executes any mortgage or gives other security to the surety or indorser to indemnify him against loss by reason of his suretyship, the surety or indorser may proceed to foreclose such mortgage, or enforce such other lien or security as soon as judgment shall be rendered

against him on his contract." We think this prescribes a rule which was intended to be general, and that it comprehends all cases of the class mentioned. By clear implication it negatives any right of foreclosure until the surety or indorser has paid something on the debt, or judgment has been rendered against him on his contract. In the present case neither of these events has occurred. The indorser is consequently without any right to inaugurate any proceeding to foreclose the mortgage. As to him the mortgage is immature, there has been no breach of its condition, it is not yet due and payable and may never become so. It logically follows that the creditor cannot proceed on his own behalf to enforce the mortgage, although the petition alleges that the indorser, as well as the principal debtors, is insolvent. Notwithstanding decisions of some other courts to the contrary, there is manifestly no element of trust in a mortgage of this character. It does not by its own vigor devote or appropriate the property embraced in it to the payment of the debt, but only to the indemnity of the indorser in the event he should sustain loss by reason of his indorsement, and it is recited that he indorsed the notes for accommodation. The mortgage created a mere lien, and therefore could not raise any trust by reason of passing title into the mortgagee. It passed no title. It was executed in this State by residents thereof, and all the property mortgaged is personalty. To say that the mere lien which it creates in favor of the mortgagee for his own personal indemnity is now held by him in trust for the creditor and not exclusively for his own benefit, would be altogether arbitrary. It would not harmonize with the intention of the parties in creating the lien, nor with any sound public policy in regulating the rights and powers of contracting parties over the care of their own interests. What a man acquires and holds for himself only with no present

power to enforce it, should not be wrested from him, especially when he is not a party before the court, on the ground of an imaginary trust. And this is equally true whether he is solvent or insolvent. His insolvency, were he a party before the court, might be a reason for seizing upon this mortgage as his property and displacing him from the control of it. But this would be a very different thing from claiming it by the creditor as a ·beneficiary of a trust which either sprang .into existence when the mortgage was taken, or in some mysterious way arose by operation of law afterwards when the mortgagee became insolvent. On principle, it seems to us that, if the creditor can ever enforce the mortgage, the right must be based on the doctrine of subrogation. The principles of equity may entitle the creditor to be hereafter subrogated to the right of the mortgagee. And by the terms of the code above recited, the mortgagee's right is to proceed as soon as judgment has been rendered against him. By subrogation the creditor could acquire no broader or better right; for one cannot take by subrogation what did not before exist in the party to whose right the party substituted in his place succeeds. We hold that, because the indorser has no right to proceed at present on this mortgage, the creditor has none. Some of the learning on the general subject may be found in Notes to Dering *v*. Earl of Winchelsea, 1 White & Tud. L. C. Eq. 174 *et seq.* (Hare & Wallace's ed.); Harris on Subrogation, §591; Sheldon on Subrog. §154 *et seq.*; 2 Brandt on Suretyship, §324 *et.seq.* The latest case known to us is *In re* Walker, Sheffield Banking Co. *v*. Clayton, [1892] 1 Ch. 621, a decision made by Stirling, J., in January, 1892. The case of Pool *v*. Doster, 59 Miss. 258, holds, we think correctly, that insolvency makes no difference. The briefs of counsel in that case contain very full citations of previous cases, most of them decided by American

courts. The weight of authority may seem contrary to the Mississippi doctrine, but we think that doctrine coincides with our law.

2. As the creditor must wait for subrogation until he has obtained judgment against the indorser, when by operation of law the mortgaged property will become a fund subject to be applied to payment of the debt, he has no standing in court to impound the mortgaged assets or to interfere with them, certainly not without making the mortgagee a party, inasmuch as the mortgagee, until some one becomes entitled to take his place, has the right to preserve the security in his own way, the security until then being personal to himself. And inasmuch as the creditor comes without right, legal or equitable, to assert the mortgage against the mortgagors, they can resist him by demurrer, as his petition shows no title in the party plaintiff. It was suggested on the argument that the demurrer could not be effective because it was presented in the individual names of the members composing the firm of McGhees & Co., and not by the firm in the partnership name. This objection, we think, is without merit. 　　　*Judgment affirmed.*