## JOHNSON *et al. v.* BREWER *et al.*

1. Where a person borrowed money and gave a note therefor, with sixteen accommodation indorsers, and executed to two of them an absolute conveyance of real and personal property, in which they were "authorized to sell the same or any part thereof at private sale, or at public sale, for cash, paying the purchase-price thereof on the promissory note," and to make such deeds, bills of sale, or other conveyances, in the name of the creditor, as might be necessary for carrying into effect the intention of the deed; and where it was provided that if either of the grantees should fail or refuse to act in pursuance of the terms and conditions of the deed, the remaining grantee alone might do so, and that in the event of the death or resignation of both of them the indorsers should name a successor or successors, who should have all the powers of the original grantees, such a conveyance was a voluntary assignment for the benefit of creditors, and a compliance with the essential requirements of the statute was necessary to its validity.

2. This is true although the deed declared that it was made in order to indemnify the indorsers against loss, "the intention of the deed being for the express purpose of vesting the title of the property herein conveyed in the said parties of the second part, for the use and benefit of them, the said indorsers." The instrument contained no clause of defeasance, and was not in the nature of a mortgage or mere security, but was an absolute conveyance to trustees to sell property and apply the proceeds to the payment of the note held by the creditor.

JULY 15, 1910.

Equitable petition. Before Judge Seabrook. Liberty superior court. February 20, 1909.

W. T. Brewer, as tax-collector of Liberty county, became in-
debted to it on account of taxes. In order to raise money to pay
the amount thus due, he made a note to N. McQueen. On the
same day, August 27, 1903, he executed a conveyance of certain real
and personal property, including a mortgage held by him, to J. R
Ryon and C. W. Hendry, the instrument being executed like a deed,
and duly attested and recorded. After the description of the prop-
erty, it proceeded as follows: "To have and to hold the above-
described realty and personalty unto them, the said parties of the
second part, with all and singular the rights, members, and appur-
tenances thereto appertaining, to the only proper use, benefit, and
behoof of them, the said parties of the second part, and their heirs
and assigns, in fee simple. The condition of the above conveyance
is such, that, whereas the said party of the first part has this day
made his promissory note for the sum of $2,645.00, payable to N.
McQueen, in which he has become indebted to said McQueen in the
sum above named, which said promissory note has, by [sixteen
named persons, two of whom were the grantees, been] indorsed,
whereby the said indorsers have become liable for the payment of
the amount of the said promissory note: now in order to indemnify
them, the said indorsers, against loss by reason of said indorsement,
the said party of the first part has this day sold and conveyed to
the said parties of the second part all of the above-described prop-
erty, who are authorized to sell the same or any part thereof at pri-
vate sale, or at public sale for cash, paying the purchase-price thereof
on the promissory note above described; and in my name to make or
cause to be made all deeds, bills of sale, or such other conveyances as
may be necessary for the carrying into effect the intention of this
deed, in as full and complete a manner as the said party of the
first part could have done. And should either of the parties herein
named as parties of the second part for any reason fail and refuse
to act in pursuance of the terms and conditions of this deed, then
the remaining party therein named as party of the second part may
act as if no other party had been named; and in the event of death
or resignation of both of the parties of the second part, then the
indorsers of the said promissory note above referred to, or a ma-
jority of the same, shall name a successor or successors who shall
have all the powers herein granted to the said parties of the second
part; the intention of this deed being for the express purpose of

vesting the title of the property herein conveyed in the said parties of the second part, for the use and benefit of them, the said indorsers." At the time of the execution of this conveyance Brewer was insolvent, and was not indebted to McQueen, Ryon, or Hendry in any other manner than as above stated. On June 18, 1904, Ryon and Hendry, by virtue of the power contained in the deed to them from Brewer, conveyed the property to McQueen for the recited consideration of "$1,800 cash in hand paid." Several creditors of Brewer filed an equitable petition attacking these conveyances. The facts were not in controversy, and it was agreed that the case would be controlled by a determination of the question whether the transaction constituted an assignment or only a deed to indemnify certain indorsers. The presiding judge held that the deed did not constitute an assignment, and rendered judgment in favor of the defendants. The plaintiffs excepted.

*Donald Fraser,* for plaintiffs.

*Garrard & Meldrim* and *S. B. Brewton,* for defendants.

LUMPKIN, J. (After stating the foregoing facts.) The word "assignment" has several meanings. In a broad sense it is used to signify the act by which one person transfers to another, or causes to vest in such other, the entire right, interest, or property which he has in any realty or personalty, in possession or in action, or some share, interest, or subsidiary estate therein. It is more particularly applied to a written transfer, as distinguished from a transfer by mere delivery. An assignment for the benefit of creditors has been defined to be "an assignment whereby a debtor, generally an insolvent, transfers to another his property, in trust to pay his debts or apply the property upon their payment." Black's L. Dic. The distinction between an assignment for the benefit of creditors and a conveyance to secure an indebtedness or to secure an indorser or security against loss is illustrated by two cases decided by this court in February, 1892: *Kiser & Co.* v. *Dannenberg Co.,* 88 *Ga.* 541 (15 S. E. 17), and *Importers and Traders Bank* v. *McGhees & Co.,* 88 *Ga.* 702 (16 S. E. 27). In the former case an insolvent debtor assigned to one of the creditors notes and accounts to the amount of about $3,000 as collateral security, and made to him a mortgage upon a stock of goods and other personal property to secure an indebtedness of $3,400, the mortgage containing a power to sell the goods at wholesale or retail; and the creditor, by

contemporaneous writings, stipulated to pay off the debt of another creditor out of the proceeds of the notes, accounts, and mortgaged property, and also to pay over to such other creditor all the money realized over and above $2,600, and further that the stock when sold should bring 80 per cent. of invoice cost. It was held that the mortgage, together with the contemporaneous writings, constituted an assignment, and that it was void for failure to comply with the requirements of the statute on the subject of assignments for the benefit of creditors. In the opinion Mr. Justice Simmons said: "Whether the trust was merely for one of the defendants, or, as was contended, for the entire body of creditors, we need not consider. It is the element of trust which brings it within the statute. Nor does it matter that the conveyance was in form a mortgage. It is sufficient that the security inures not merely to the benefit of the mortgagee, but also to that of another creditor for whom he holds in trust." In the second of the two cases cited a mortgage was given by the principal debtor to his indorser, not as a security for the debt, but solely for the indemnity of the indorser, to secure him against any loss that he might sustain by reason of such indorsement. It was held that, under section 2164 of the Code of 1882 (§ 2983 of the Civil Code of 1895) the indorser could not proceed against the mortgaged property until judgment had been rendered against him in favor of the creditor; and that prior to that time the creditor could not claim any right of subrogation to enforce the mortgage. In the opinion Chief Justice Bleckley said: "Notwithstanding decisions of some other courts to the contrary, there is manifestly no element of trust in a mortgage of this character. It does not by its own vigor devote or appropriate the property embraced in it to the payment of the debt, but only to the indemnity of the indorser in the event he should sustain loss by reason of his indorsement, and it is recited that he indorsed the notes for accommodation. The mortgage created a mere lien, and therefore could not raise any trust by reason of passing title into the mortgagee. It passed no title." under the law of this State. In Hoffman v. Mackall, 5 Ohio St. 124 (64 Am. D. 637), an assignment or unconditional deed of trust was distinguished from a mortgage, or deed of trust in the nature of a mortgage, thus: "There is a manifest and well-settled distinction between an unconditional deed of trust and a mortgage, or deed of trust in the nature of a

mortgage. The former is an absolute and indefeasible conveyance of the subject-matter thereof for the purposes expressed; whereas the latter is conditional and defeasible. A mortgage is the conveyance of an estate, or pledge of property, as security for the payment of money or the performance of some other act, and conditioned to become void upon such payment or performance. A deed of trust in the nature of a mortgage is a conveyance in trust by way of security, subject to a condition of defeasance, or redeemable at any time before the sale of the property. A deed conveying land to a trustee as mere collateral security for the payment of a debt, with the condition that it shall become void on the payment of the debt when due, and with power to the trustee to sell the land and pay the debt in case of default on the part of the debtor, is a deed of trust in the nature of a mortgage. By an absolute deed of trust the grantor parts absolutely with the title, which rests in the grantee unconditionally for the purpose of the trust. The latter is a conveyance to a trustee for the purpose of raising a fund to pay debts, while the former is a conveyance in trust for the purpose of securing a debt, subject to a condition of defeasance." See also Crow v. Beardsley, 68 Mo. 435, 438; DeWolf v. Sprague Mfg. Co., 49 Conn. 282; Burrill on Assignments (6th ed.), § 8.

Tested by the principles above announced, the deed from Brewer to Ryon and Hendry was a voluntary assignment. Brewer made a promissory note to McQueen, with sixteen indorsers. Being insolvent at the time, he conveyed realty and personalty to two of these indorsers. It was stated in the deed that it was made in order to indemnify the indorsers against loss, and that it was for the express purpose "of vesting the title of the property herein conveyed in the said parties of the second part, for the use and benefit of them, the said indorsers." But it was not conditioned upon the indorsers being held liable, or suffering loss. There was no clause of defeasance in case they did not have to pay the indebtedness or did not incur any loss. The conveyance was absolute. It was not a deed of trust in the nature of a mortgage. The two grantees named were trustees to do certain acts. It was expressly declared that if either of them failed or refused "to act in pursuance of the terms and conditions of this deed," the other should have power to do so; and that in the event of the death or resignation of both of them, the indorsers should

name a successor or successors, who should have all the powers of
the original grantees. Clearly this created a trust with certain
powers to be executed. What they were to do is thus stated in the
deed: they "are authorized to sell the same or any part thereof at
private sale, or at public sale for cash, paying the purchase-price
therefor on the promissory note above described, and in my name
to make or cause to be made all deeds, bills of sale, or such other
conveyances as may be necessary for the carrying into effect the in-
tention of this deed." There was no conveyance by the debtor to
the principal creditor, either in payment of the debt or to se-
cure it. There was not a mere security given to the indorsers to
indemnify them against loss. There was an absolute trust deed to
two of the indorsers, with power in the trustees to sell and convey
the property, and appropriate the proceeds to the payment of the
note. Under such a deed, they could not exercise the power for any
other purpose. Even precatory or recommendatory words will
suffice to create a trust if they are sufficiently imperative to show
that it is not left discretionary with the party to act or not, and if
the subject-matter of the trust is defined with sufficient certainty,
and if the object is also clearly defined, and the mode in which the
trust is to be executed. Civil Code, § 3162. While the primary
purpose alleged for the making of the deed was the benefit of the
indorsers, yet that benefit was to be worked out, without regard to
any loss or payment by the indorsers or judgment against them, by
means of a payment to the creditor, to be made by the trustees.
This constituted an assignment.

       *Judgment affirmed. All the Justices concur, except*

HOLDEN, J., dissenting. I can not concur in the judgment of
the other members of the court, but must dissent therefrom. The
deed in question expressly states that it was made "in order to in-
demnify them, the said indorsers, against loss by reason of said in-
dorsement," and further declares, "the intention of this deed being
for the express purpose of vesting the title of the property herein
conveyed in the said parties of the second part, for the use and
benefit of them, the said indorsers." The indorsers were not cred-
itors of the grantor. The fact that authority was given for a sale
of the property and the payment of the proceeds thereof to the
payee of the note did not make the deed one of assignment. The
cardinal rule of construction of instruments in writing is to arrive

53

at the intention of the parties. The intention of the parties to this instrument was that the deed should operate merely as a security to the indorsers. As before stated, the deed expressly declares that it is made "in order to indemnify them, the said indorsers, against loss by reason of said indorsement," and the Civil Code, § 2983, provides: "If the principal executes any mortgage or gives other security to the surety or indorser to indemnify him against loss by reason of his suretyship, the surety or indorser may proceed to foreclose such mortgage, or enforce such other lien or security, as soon as judgment shall be rendered against him on his contract." In *Importers Bank* v. *McGhees,* 88 *Ga.* 702, 708 (16 S. E. 27), in discussing the section just quoted, the court says: "We think this prescribes a rule which was intended to be general, and that it comprehends all cases of the class mentioned. By clear implication it negatives any right of foreclosure until the surety or indorser has paid something on the debt, or judgment has been rendered against him on his contract. In the present case neither of these events has occurred. The indorser is consequently without any right to inaugurate any proceeding to foreclose the mortgage. As to him the mortgage is immature, there has been no breach of its condition, it is not yet due and payable and may never become so. It logically follows that the creditor can not proceed on his own behalf to enforce the mortgage, although the petition alleges that the indorser, as well as the principal debtors, is insolvent. Notwithstanding decisions of some other courts to the contrary, there is manifestly no element of trust in a mortgage of this character. It does not by its own vigor devote or appropriate the property embraced in it to the payment of the debt, but only to the indemnity of the indorser in the event he should sustain loss by reason of his indorsement, and it is recited that he indorsed the notes for accommodation." Under the code section above quoted, the indorsers would have no right to exercise the power of sale contained in the deed to them until judgment had been rendered against them, or until they had paid the debt, or some part thereof. The deed recited that it was made "in order to indemnify them, the said indorsers, against loss by reason of said indorsement," and further recited, "the intention of this deed being for the express purpose of vesting the title of the property herein conveyed in the said parties of the second part, for the use and benefit of them, the

said indorsers." In view of these statements in the deed, and the provision of the code section above quoted (the meaning of which is that the power of sale could not be exercised until judgment has been rendered against the indorsers, or until they have paid the debt, or some part thereof), the deed, properly construed, conveyed the title to the property simply for the purpose of indemnifying the indorsers, and can not properly be held to be an assignment for the benefit of any creditor or creditors of the maker of the deed.