## OLOF NELSON v. ANTHONY POSS AND OTHERS.[1]

July 8, 1927.

No. 26,205.

**Trust deed to directors of defendant bank was not void under fraudulent conveyance act and was given upon a fair consideration.**

[1] An instrument transferring to certain directors of defendant bank real estate, shares of stock, and a mortgage to secure the payment of an obligation or debt which the grantor, the managing officer of the bank, admitted he incurred to the bank, was given upon a fair consideration and was not void under the uniform fraudulent conveyance act, even though the giving of the instrument rendered the grantor insolvent, there being no evidence of an actual intent to defraud creditors.

[1] Reported in 214 N. W. 787.

**Trust deed was a mortgage and not an assignment for benefit of grantor's creditors.**

[2]    The instrument, in the light of the circumstances attending its execution, is *held* to be a mortgage and not an assignment for the benefit of creditors.

**Failure to pay mortgage registry tax before trial did not avoid instrument.**

[3]    The fact that the mortgage registry tax was not paid until after the trial but before final submission of the case does not avoid the instrument.

Assignments for Benefit of Creditors, 5 C. J. p. 1038 n. 46.
Fraudulent Conveyances, 27 C. J. p. 627 n. 18.
Taxation, 37 Cyc. p. 1158 n. 26.

---

See note in 37 L. R. A. 337; 2 R. C. L. 663; 1 R. C. L. Supp. 603; 4 R. C. L. Supp. 121.

Defendants appealed from an order of the district court for Renville county, Baker, J., denying their motion for a new trial. Reversed with directions.

*Freeman & Smith,* for appellants.

*J. N. Johnson* and *T. O. Streissguth,* for respondent.

HOLT, J.

The appeal is from an order denying defendants a new trial.

The action was brought by plaintiff, a creditor of the estate of Andrew J. Olin, in behalf of himself and other creditors who might choose to come in, to set aside a deed of trust given by Olin in his lifetime to the directors of the defendant bank, and to recover the property or value of the property disposed of under the terms of the deed, on the ground that the transfer was in fraud of Olin's creditors. The trust deed was made a part of the complaint. The latter contained the necessary allegations of the appointment of an administratrix of Olin's estate, the filing and allowance of plaintiff's and other creditors' claims, the nonpayment of plaintiff's claim, and the refusal of the administratrix to bring this action. It is also alleged that the trust deed was not recorded or filed with

the clerk of the district court, that Olin made it with intent to hinder and defraud his creditors and it was accepted by the trustees, the directors of the bank for whose benefit it inured, with full knowledge of such intent, that its giving made Olin wholly insolvent, and that there was no compliance with the statute relating to assignments for the benefit of creditors, the main contention being that the trust deed amounted to a common law assignment for the benefit of creditors and is void, whereas defendants' claim is that it was given as security for the obligation incurred by Olin to the bank, and that it is and was intended to be a mortgage.

[1] The findings as amended, so far as material to a decision, may be thus summarized: Defendant bank is capitalized at $15,000, of which Olin owned $7,800. For years and up to December, 1922, he had been the cashier and chief executive officer of the bank. On March 12, 1923, the trust deed was executed by Olin and wife, and the trustees at once took possession. It transferred all of Olin's property except property of the value of $5,500 (and such as was exempt from execution) sufficient to realize $23,756.24, and there remains undisposed of property to the value of $19,840. There was no consideration for the trust deed except that stated therein, and this was not a "fair" consideration as defined by L. 1921, p. 542, c. 415, § 3. At that time Olin was financially embarrassed and owed about $25,000, and was rendered insolvent by the deed, and the facts above stated were known to defendants. The deed was not recorded nor was there any compliance with G. S. 1923, c. 89 (§§ 9782-9791). No mortgage registry tax was paid until after trial, but the court permitted the case to be opened, the tax was paid, and proof thereof made and a finding to that effect. The conclusion of law was that the trust deed was fraudulent and void as to plaintiff and other creditors, and that defendants be required to pay to the administratrix of Olin's estate the amount realized from the property disposed of, less what has been paid out for conservation of what was received under the deed, and to transfer what remains.

The appeal questions the action of the court in refusing to make certain findings requested and eliminate certain ones made. It

will not be necessary to discuss these in detail, for the decisive proposition is whether the trust deed is a mortgage or a common law assignment for the benefit of creditors. If it be the latter it is concededly invalid.

Apart from what the trust deed itself reveals, the circumstances which led to its execution and the intention of the parties have a bearing. In the month of December, 1922, a bank examiner of the state found the condition of the bank unsatisfactory and a meeting of the bank directors and officers was had. Olin admitted that he had used the bank to further his private interests, unloading on it questionable mortgages of his own which had to be foreclosed, the title vesting in the bank, and that a great deal of doubtful paper held by the bank was due to his mismanagement. In order to keep the bank open, the bank examiner insisted that doubtful and worthless assets to the amount of $55,000, then accumulated, should be taken out and other security substituted. It was agreed that the bank might be kept open by Olin's executing his promissory note for $45,000 which was to be held until a trust deed could be prepared and executed. This note contained a recital of a transfer and delivery of practically the same property as in the subsequent trust deed as collateral security or pledge for the note.

Proposed trust deeds were made, but were rejected by the superintendent of banks on the advice of the attorney general's office until the one set out in the complaint was approved, and thereupon Olin and wife executed the same. It bears date March 12, 1923, and the property therein described was turned over to the trustees and the $45,000 note surrendered. The trust deed recited how the worthless and doubtful securities were accumulated for the bank by Olin as above stated, itemizing the same, the total amount being $38,801.59; also that certain real estate was carried on the books of the bank upon which there was an estimated loss of $8,500; that the superintendent of banks has ordered the removal of the $38,801.59 items stated from the assets of the bank, and that $8,500 be charged off the assets on account of the estimated loss on the real estate; that Olin, owning the majority of the stock of the bank de-

sired the bank be not closed, therefore agreed to guarantee or pay the said worthless or doubtful paper and to pay the bank the sum of $8,500, without interest, to take care of the loss on the said other real estate account, and has paid or secured $19,000 to apply thereon, and said Olin "has further promised and agreed to secure by this trust deed the payment of the remainder of said worthless and doubtful notes, and the remainder of said loss of Eighty-five hundred dollars ($8,500) on other real estate not covered by said payment of Nineteen thousand dollars ($19,000) so made by him as stated." The deed described the several items conveyed and transferred, and Olin and wife agreed to execute to third parties separate assignments and deeds for each property when sold. It provided for the taking possession by the trustees of all the property assigned and conveyed, to hold and manage "as security for the payment of the worthless and doubtful assets hereinbefore mentioned, and as security for the payment by the said Andrew J. Olin of the sum of Eighty-five hundred dollars ($8,500) hereinbefore mentioned." The net income from the property transferred was to be applied on the worthless and doubtful paper mentioned. All parties were to use their best efforts to collect on any security accompanying the same. Provisions were made for selling, mortgaging, and handling the trust property. Within three years from the date of the trust deed it contemplates that the disposition of the trust property shall be with the consent of Olin, but if the debt it was given to secure was not paid within that time the trustees shall have the right to dispose of so much of what remains as may be required to pay the balance due. There was to be no compensation to the trustees. Upon full payment by Olin of the $38,801.59 and the $8,500, first mentioned, the trustees were to forthwith surrender and deliver to him any and all of the trust property then remaining together with good and sufficient deeds and assignments thereof.

The learned trial court concluded the consideration was not "fair" within the fraudulent conveyance act, and since the conveyance rendered the grantor insolvent it was fraudulent as to then

existing creditors, without regard to the actual intent of the parties; also from attending circumstances it was considered that the parties intended to transfer the property absolutely, therefore the trust deed was not a mortgage but a common law assignment void because the statutory provisions were not complied with.

The evidence showed conclusively that the bank would have been closed in December, 1922, by the state superintendent of banks but for the agreement of Olin to secure the bank for the losses his admitted mismanagement had caused, and the giving of the $45,000 note, as above stated, the note to be surrendered when the trust deed was executed. Some delay was anticipated because the state authorities were to approve the transaction as finally formulated in the deed. We think there was a "fair" consideration conclusively proved. The evidence outside the trust deed and the consideration therein recited, towit: the obligation of Olin to pay $8,500 to the bank for the loss it sustained by his real estate deals, and to make good the $38,801.59 of doubtful or worthless paper or claims he, in his own transactions, had unloaded on the bank, prove a bona fide obligation of Olin to the bank in excess of $47,000. The court found that out of the property transferred by the trust deed $23,756.24 had been realized and that the value of what remained in the hands of the trustees was $19,840; thus clearly showing that the property covered by the trust deed was not sufficient to pay the obligation or debt intended to be secured. The value of the property transferred was $3,000 less than the debt secured.

It is impossible in that situation to sustain the finding that the consideration was not "fair." There is not the slightest foundation for questioning the bona fides of the debt or obligation of Olin to the bank as admitted by him in the note, in the deed, and otherwise. There is no claim, and there could be none, that the giving of the $45,000 note by Olin to the bank or his admission that he was under obligation or in debt to the bank as recited in the trust deed was a subterfuge to defraud other creditors. We are therefore clear that the conclusion of the court, that the fraudulent conveyance act renders the trust deed void, is wrong. There was

a fair consideration under G. S. 1923, § 8477 (§ 3, fraudulent conveyance act—L. 1921, p. 642, c. 415), so that the fact that the deed might have left Olin insolvent did not render it fraudulent without regard to his actual intent under § 8478 (§ 4, fraudulent conveyance act). There is no finding of actual intent to defraud creditors, and none could be made upon this record. The finding that defendant trustees knew that the effect of the deed would be to render Olin insolvent, which is really contrary to the evidence, is not important, for it does not show a fraudulent intent. At most it shows an intent to prefer the bank to other creditors, which is not a fraud upon them. Engenmoen v. Lutroe, 153 Minn. 409, 190 N. W. 894.

[2] Is the trust deed a mortgage or an assignment for the benefit of creditors? The authorities generally approve of this test:

"If the conveyance is to a trustee, and the debtor intends to divest himself, not only of the title to the property, but of all control over it; if it is intended as an absolute conveyance of all his property, and is made for the purpose of securing a distribution of its proceeds among his creditors, or a portion of them,—in legal effect it is an assignment for the benefit of creditors, no matter what name or designation the parties may have given it. On the other hand, if the intention of the debtor is merely to secure his debt to one or more of his creditors, and the conveyance is not intended as an absolute disposition of his property, but he reserves to himself a right therein, the conveyance will be treated as a mortgage, even though the debtor is insolvent at the time, and it covers all of his property, and but a portion of his debts are secured by it." Cadwell's Bank v. Crittenden, 66 Iowa, 237, 240, 23 N. W. 648, cited in Sabichi v. Chase, 108 Cal. 81, 41 P. 29; Heath v. Wilson, 139 Cal. 362, 73 P. 182. Substantially the same test is given in Johnson v. Brewer, 134 Ga. 828, 68 S. E. 590, 31 L.R.A.(N.S.) 332, cited by respondent.

When it comes to a practical application of the test as to when a particular transfer is an assignment for the benefit of creditors or a mortgage securing a debt, we find a diversity in the decisions.

A very full citation of authorities accompanies Tittle v. Vanleer (supreme court of Texas) in 37 L. R. A. 337. Many courts consider the intention of the parties of controlling importance. The name by which the instrument of transfer labels itself is not significant. To constitute an assignment for the benefit of creditors it is not necessary that all the unexempt property be transferred, nor that there be more than one beneficiary.

But as we construe the instrument here involved and the circumstances under which it was given, the conclusion is reached that the parties intended to thereby transfer property as a security and pledge, and not as an absolute assignment for the benefit of creditors. The object was to secure to the bank an obligation Olin owed it, and which he needed time to pay in cash. It was important that the bank should keep open. And a going bank of its capitalization could not well carry in its assets a $45,000 note running to itself and secured by real estate and chattel mortgages. So this deed of trust was made to members of the bank's board of directors. There was not an absolute transfer. Olin had the privilege to pay his stated obligation to the bank at any time, and the property would forthwith revert to him. Impliedly the instrument forbids a disposition of the property without his consent, until the expiration of three years. It also contains the language of defeasance above quoted. It does not provide that the trustees shall dispose of all and return to Olin the surplus of the proceeds after the bank is paid; but that when the debt is paid the property received and not disposed of shall be returned. The $19,000 item referred to in the above quoted part of the deed seems to have been paid or adjusted in Olin's lifetime. One piece of real property covered by the trust deed was sold and conveyed by Olin before the execution of the deed, and the proceeds, viz: $4,000, turned over by him and applied upon the debt; likewise Olin increased the mortgage on one of the pieces conveyed by $3,000 which the bank received and applied before his death. This having been done before the delivery of the trust deed, clearly a holding of the latter

void would not authorize a judgment restoring that which did not pass by the deed to the trustees.

However, our conclusion that the deed was intended to be and was a mortgage obviates further reference to errors assigned as to these and other items involved, such as certain stock assigned by Mrs. Olin and covered by the trust deed. We have not overlooked that as between Olin and the trustees some of the provisions in the deed are void in that his right of redemption is cut off if any of the real estate in the trust deed is disposed of by the trustees, without his consent, to good-faith purchasers.

Respondent relies on Truitt Bros. & Co. v. Caldwell, 3 Minn. 257 (364), 74 Am. D. 764, and cases from Wisconsin, particularly Maxwell v. Simonton, 81 Wis. 635, 51 N. W. 869; Kickbusch v. Corwith, 108 Wis. 634, 85 N. W. 148; while appellant places much reliance upon Dyson v. St. Paul Nat. Bank, 74 Minn. 439, 77 N. W. 236, 73 A. S. R. 358. This last case and the authorities therein referred to go far to sustain the conclusion that the instrument here involved is a mortgage and was so intended to be by the parties thereto.

[3] That the mortgage registry tax was not paid until after the trial, but before final submission of the case, we deem of no consequence now, there being no finding that its nonpayment was intended to defraud the state of its revenue. In fact, the deed was admitted by the pleadings and was the instrument attacked by plaintiff, but not on the ground of invalidity because of the nonpayment of the mortgage registry tax. The delayed payment did not prejudice plaintiff. Greenfield v. Taylor, 141 Minn. 399, 170 N. W. 345; John v. Timm, 153 Minn. 401, 190 N. W. 890; Engenmoen v. Lutroe, 153 Minn. 409, 190 N. W. 894.

The order is reversed and the case is remanded with direction to amend the findings of fact and conclusions of law or to grant a new trial.