## JONES v. NORTON et al.

1. On August 6, 1909, J. as principal, and N. as indorser, gave to a bank 18 promissory notes aggregating $3,500, maturing at the rate of one note on the 6th day of each succeeding month after their execution. J. gave to N., at the time of making the notes to the bank, 18 notes for $50 each, which respectively matured on the same dates as the notes given to the bank. The notes given by J. to N. were in consideration of the indorsement of the notes to the bank, which indorsement was

necessary to enable J. to obtain the loan from the bank for which the notes to it were given. At the time the notes were made J. executed to N. a mortgage on described personalty. There was a recital in the mortgage that it was given for the purpose of securing N. "from any and all loss and expenses they may incur by reason of such indorsements," as well as to secure the payment of the series of $50 notes given by J. to N. The mortgage contained the stipulation that "it is hereby covenanted and agreed, in further consideration of the premises, that . . upon default in the payment of any taxes or other assessments, or default in the payment of any debt or obligation which may become a lien upon the said property hereby mortgaged, that from thenceforth it shall and may be lawful for the parties of the second part . . at their option to declare the whole remaining indebtedness then unpaid to be due and payable at once," giving to the mortgagees the right to sell the mortgaged property and the equity of redemption of the mortgagor therein for the purpose of paying the principal and interest on the debt and the costs of sale, together with attorney's fees and commissions, the surplus, if any, to be paid to the mortgagor. The mortgage also provided that the mortgagees, upon such default, might take such other legal proceedings as they might deem necessary and proper. *Held:* (*a*) Upon the happening of such default the mortgagees could not, under the statutory proceeding for the foreclosure of chattel mortgages, foreclose the mortgage given them by Jones for the amount of the notes given to the bank and remaining unpaid, which it then held, the bank being no party to the mortgage; and the fact that the mortgagees executed and the trial judge approved a bond given by the mortgagees to the mortgagor, to indemnify him against loss as to the notes given to the bank, did not change the rule. (*b*) The mortgagees could, however, foreclose the mortgage, under the statutory proceeding, upon the default of the mortgagor as stated, for the indebtedness represented by so many of the series of $50 notes given by the mortgagor to the mortgagees and remaining unpaid at the time of such default. (*c*) And the right to the last-mentioned foreclosure was not affected by the facts, that no levy had been made to collect the unpaid taxes due by the mortgagor, and that the same were paid after default and prior to the trial, and that judgments against the mortgagor were obtained subsequently to the record of the mortgage, and that no execution had been issued for a city license due by the mortgagor.

2. A proffered amendment to the affidavit of illegality, which was disallowed by the court, could not properly be brought up as a part of the record.

SEPTEMBER 25, 1911.

Affidavit of illegality. Before Judge Charlton. Chatham superior court. March 12, 1910.

On August 6, 1909, N. N. Jones as principal and J. V. and J. H. Norton as indorsers, gave the Citizens & Southern Bank eighteen promissory notes aggregating $3,500, maturing at the

rate of one note on the sixth day of each succeeding month after their execution. Jones gave to the Nortons, at the time of making the notes to the bank, his eighteen notes for $50 each, which respectively matured on the same dates as the notes given to the bank. The notes given by Jones to the Nortons were in consideration of their indorsements of the notes to the bank, which indorsements were necessary to enable Jones to obtain a loan from the bank for which the notes to it were given. At the time the notes were made, Jones executed to the Nortons a mortgage on his stock of goods and other personalty. There was a recital in the mortgage that it was given for the purpose of securing the Nortons "from any and all loss and expenses they may incur by reason of said indorsements," as well as to secure the payment of the series of $50 notes given by Jones to the Nortons. The mortgage also contained the following clause: "And it is hereby covenanted and agreed, in further consideration of the premises, that . . . upon default in the payment of any taxes or other assessments, or default in the payment of any debt or obligation which may become a lien upon the said property hereby mortgaged, that from thenceforth it shall and may be lawful for the parties of the second part [the Nortons], . . at their option, to declare the whole remaining indebtedness then unpaid to be due and payable at once, and to grant, bargain, sell, and dispose of said before-mentioned property and all benefit and equity of redemption of said party of the first part, according to the laws of Georgia, paying to the said party of the first part [Jones] the overplus of the purchase-money to be obtained therefor after the satisfaction of the principal and interest due on said debt aforesaid, the costs of advertising and sale, and costs of foreclosing, with attorney's fees and commissions to be due on said foreclosure and the collection of said debt." A further provision of the mortgage was that "the parties of the second part, . . shall have the right either to sell said property in the manner hereinbefore stated, or they may take such other legal proceedings hereunder as they may deem necessary and proper in the premises; but whatever proceedings may be taken to collect the debt hereby secured, or to sell the said property, the proceeds of the sale of said property shall be applied as hereinbefore set forth." On February 17, 1910, an affidavit was made by one of the Nortons for the statutory foreclosure of the mortgage. It was stated in the

affidavit that Jones, the mortgagor, was indebted to the mortgagees "in the sum of $2,850.00 principal, with interest as stipulated in said mortgage, and that the amount of said several sums is now due; that the same is due by reason of the following provisions in said mortgage, to wit:" Then follows a quotation of the clause in the mortgage making the whole indebtedness due at the option of the mortgagees upon the default of the mortgagor in the payment of any taxes or other assessments, or default in the payment of any debt or obligation which may become a lien upon the mortgaged property. It was averred in the affidavit that the mortgagor had defaulted in the payment of taxes due on the property covered by the mortgage, in a given amount for State and county taxes for the year 1909, a city license for a given amount for the year 1910, two judgments against the mortgagor for stated amounts rendered in a justice's court on October 13, 1909, two judgments rendered against him for stated amounts in the same court on December 8, 1909, two judgments against him in stated amounts rendered in the same court on January 12, 1910, and another for a given amount rendered in the same court on February 9, 1910; and that before the making of the affidavit, the amount sworn to be due the mortgagees had been declared to be due under the terms of the mortgage and demand for its payment made, which was refused. The mortgagor filed an affidavit of illegality upon the grounds, in substance, among others, (*a*) that none of the notes were due, and no default had been made in the payment of any of them; (*b*) that the mortgagor still owed to the bank the notes given to it which were not due, and the bank had not declared the entire debt due, and that no part of that indebtedness was owing and due to the mortgagees; (*c*) that no judgment had been rendered against the mortgagees upon their contract of suretyship; (*d*) that State and county taxes, alleged in the affidavit of foreclosure to have been due, have been paid, that no execution had been issued for the license tax or any demand made for its payment, and that the judgments referred to in the affidavit of foreclosure constituted no lien upon the property mortgaged that could in any way defeat the lien of the mortgage; (*e*) "that the plaintiffs have no right to demand payment of all of the $50.00 notes, for the reason that it affirmatively appears in and by the mortgage that the defendant, by paying the principal to the Citizens & Southern Bank, would

be relieved from the payment of the $50.00 notes and that none of said $50.00 notes are now due;" and (f) that the mortgagor had paid all the notes given to the bank which had matured. An application was made by the mortgagees to the judge of the superior court to sell the property levied on in the mortgage fi. fa., in accord- ance with the statute providing for the speedy sale of goods under levy and which are expensive to keep. The mortgagor filed objec- tions to the granting of such an order, the grounds of objection being the same as those set out in the affidavit of illegality. By consent of the parties, the judge of the superior court, without the intervention of a jury, tried and passed on all issues made by the affidavit of illegality and objections to the sale. After hearing evidence and argument, he adjudged that the mortgagees were en- titled to proceed with the mortgage execution for the sum of $2,850 principal, with interest at 8 per cent. on $2,300 (the sum of the unpaid notes given to the bank) from August 6, 1909, and all costs of foreclosure. The judgment contains the following recital: "Said J. V. Norton and J. H. Norton having tendered a bond to indemnify the said N. N. Jones against any loss by reason of the notes held by the Citizens & Southern Bank, the said bond is hereby approved and ordered filed as a part of the record." A sale of the property was ordered after ten days advertisement. Jones, the mortgagor, excepted to the judgment rendered and the order granted, assigning error therein upon substantially the same grounds as contained in his affidavit of illegality.

　　*Robert L. Colding* and *James F. Evans,* for plaintiff in error.
　　*Edward S. Elliott* and *William M. Farr,* contra.

　　FISH, C. J. (After stating the foregoing facts.)

　　1. Some courts have sought to establish a distinction between a contract of a principal to indemnify his surety against damage merely and nothing more, and a contract by which a principal un- dertakes to indemnify his surety against any liability for the fail- ure of the principal to do a certain act or pay a certain sum of money at a stated time; and have held that in instances of the first character damage must be shown before the surety is entitled to. recover; but in cases of the latter kind the surety upon the default of his principal has a right of action though he has not been damni- fied. This distinction, however, has not been recognized by all courts, and even where it has been adopted the different courts

have not agreed as to the measure of damages the surety is entitled to recover in cases falling within the latter classification. In the view we take of the case now before us, it is unnecessary to commit ourselves as for or against the doctrine above stated. The mortgagees in the present case adopted the statutory proceeding for the foreclosure of a chattel mortgage, which is, that: "Any person holding a mortgage on personal property, and wishing to foreclose the same, shall, either in person, or by his agent, or attorney in fact or at law, go before some officer of this State who is authorized by law to administer oaths, . . and make affidavit to the amount of principal and interest due on such mortgage, . . and when such mortgage, or sworn copy, with such affidavit annexed thereto, shall be filed in the office of the clerk of the superior court of the county wherein the mortgagor resides at the date of the foreclosure, . . it shall be the duty of such clerk to issue an execution . . commanding the sale of the mortgaged property to satisfy the principal and interest, together with the cost of the proceedings to foreclose the said mortgage." Civil Code (1910), §. 3286. This section clearly contemplates that the affidavit shall be made as to the amount of principal and interest due to the holder of the mortgage; and it follows that a chattel mortgage can not be foreclosed, under the statutory proceeding, for a debt owing to any one other than the holder of the mortgage. In the case under review there was no covenant that Jones, the mortgagor, should pay to the Nortons, the mortgagees, any of the indebtedness evidenced by the notes which Jones as principal and the Nortons as his sureties had given the bank. Jones owed such indebtedness to the bank, and there was no contingency in the mortgage upon the happening of which he would owe it to the Nortons, except their payment of it to the bank. The mere fact that Jones covenanted in the mortgage that all of the notes remaining unpaid should become due upon his default as to the payment of taxes, etc., did not, upon such default, make him indebted to the Nortons for what he owed the bank, especially as the bank was not a party to such covenant. If Jones, in order to secure the Nortons, had given them a note for the sum of the notes given to the bank, or had entered into a covenant with them to pay such sum, then a different question would be presented. Even in such a case, there is a difference of judicial opinion as to whether the mortgagees

could recover before judgment had been rendered against them, or they had been damaged. Nor are the courts, which hold that the mortgagees in such circumstances may recover, unanimous as to the method by which the mortgagor should be protected from the possibility of having subsequently to pay the same debt to the creditor. In the case under consideration, the Nortons tendered, and the trial judge approved, a bond given by the Nortons, the mortgagees, to Jones, the mortgagor, to indemnify Jones against any loss by reason of the notes held by the bank against Jones as principal and the Nortons as sureties; but our statute does not recognize or provide for such a bond. The ordinary rule stated in our code is: "If the principal executes any mortgage or gives other security to the surety or indorser to indemnify him against loss by reason of his suretyship, the surety or indorser may proceed to foreclose such mortgage, or enforce such other lien or security as soon as judgment shall be rendered against him on his contract." Civil Code (1910), § 3555. Under this section no foreclosure can be had ordinarily until after judgment against the mortgagee. *Importers & Traders Bank* v. *McGhees,* 88 *Ga.* 702 (16 S. E. 27). Our conclusion is that the Nortons did not have the right, under the statutory proceedings to foreclose chattel mortgages, to foreclose the mortgage held by them for the amount of the notes given by Jones as principal and themselves as sureties, which notes the bank held.

The mortgagees, however, did have the right to foreclose the mortgage, under the statutory proceedings, upon the default of the mortgagor to pay taxes due on the mortgaged property, or failure to discharge the judgments rendered against him, or for the indebtedness represented by so many of the series of $50 notes given by the mortgagor to the mortgagees and remaining unpaid at the time of such default, and which were given by the mortgagor to the mortgagees in consideration of their suretyship on the notes given by the mortgagor to the bank. This series of notes represented an indebtedness of the mortgagor to the mortgagees, the payment of which was secured by the mortgage; and their maturity was accelerated, in accordance with the covenant in the mortgage, upon the default of the mortgagor as above stated. The facts, that no levy had been made to collect the unpaid taxes, and that the same were paid prior to the trial, and that the judgments

against the mortgagor were obtained subsequently to the record of the mortgage, and that no execution had been issued for the city license, were not valid reasons why the mortgage should not be foreclosed for the indebtedness due to the mortgagees under the mortgage and the covenant contained therein. There is no merit in any of the other assignments of error, nor do they require special consideration.

2. The mortgagor offered an amendment to his affidavit of illegality, which was disallowed by the court. Error is assigned upon this ruling, in the bill of exceptions. However, the proferred amendment is not set out therein, nor attached thereto as an exhibit, but is sought to be brought up only as a part of the record. As has been frequently decided, such assignment of error presents no question for review. *Williford* v. *Denby*, 127 *Ga.* 786 (56 S. E. 1010).

It follows from what has been said, that the judgment, in so far as it authorized the defendants in error to proceed to collect, in the foreclosure proceedings, the sum of $2300, the indebtedness represented by the notes given to the bank with interest thereon, must be      *Reversed. Beck, J., absent. The other Justices concur.*